In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 05-1014

CREWS & ASSOCIATES, INC.,

*Plaintiff,*

*v.*

UNITED STATES OF AMERICA, et al.,

*Defendants-Appellees.*

APPEAL OF:

CORNELIUS THOMAS DUCEY, JR.,

*Appellant.*

---

Appeal from the United States District Court
for the Southern District of Illinois.
No. 03 CV 154—**G. Patrick Murphy**, *Chief Judge.*

---

SUBMITTED MAY 31, 2006—DECIDED AUGUST 16, 2006

---

Before KANNE, EVANS, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Thomas Ducey, an attorney (whose license is currently suspended), appeals from a disqualification order entered against him in this case. His clients did not join this appeal. As we explain below, the appeal is dismissed for lack of jurisdiction.

This case has its roots in the activities of a man named James Gibson who, for a while, ran a company providing

structured settlements to personal injury plaintiffs.[1] The settlement funds of Gibson's clients were initially held with legitimate trust companies, including Magna Bank. Gibson then decided to take the money out of the bank and put it into a corporation. Magna Bank balked, thinking that it was illegal for Gibson to transfer the trust funds. Gibson hired Ducey to fight the bank, and the duo was successful in removing the monies from the bank and placing them in a corporation controlled by Gibson. Ducey's representation of Gibson ended shortly thereafter. Gibson then began to steal the money he was supposed to be holding in trust for his clients. When a federal investigation began, Gibson and his wife fled to Belize on a luxury yacht (they were eventually arrested and returned to the United States).

Gibson was not able to loot everything before he fled the country. Several million dollars were left with Crews & Associates ("Crews"), a legitimate investment firm. On December 29, 1999, Crews filed an interpleader action in the Eastern District of Missouri for purposes of dispersing the money. Numerous tort victims filed claims for the money. Thirty-nine of these victims were represented by none other than Ducey. Several motions to disqualify Ducey were filed based upon his previous representation of Gibson. On December 5, 2001, after an evidentiary hearing spanning two days, Judge E. Richard Webber entered a sixty-two page order granting the motions to disqualify.

---

[1] The facts we recite regarding Gibson are not disputed by any party to this case. We assume them to be accurate for purposes of this case only. Gibson currently has a criminal appeal pending with this court. He pled guilty to various charges, but the resultant convictions and sentence were reversed in *United States v. Gibson*, 356 F.3d 761 (7th Cir. 2004). On remand, Gibson was tried and convicted on various counts of mail fraud and money laundering. At the time this opinion was published, his appeal with this court in No. 05-4327 remained pending.

Judge Webber ruled that Ducey could not represent any plaintiff in the action because Ducey might be called upon to testify as a witness.

On March 6, 2003, Judge Webber ordered the case transferred to the Southern District of Illinois pursuant to 28 U.S.C. § 1404(a). Without saying a word about Judge Webber's disqualification order, Ducey began to file papers on behalf of two clients—Martina Mertens-Stone ("Stone") and Roy Muir ("Muir"). At some point, it came to the attention of the government (who had since become a party) that Ducey had been disqualified. The government alerted Chief Judge Murphy to this fact. On November 2, 2004, Judge Murphy entered an order confirming that Ducey remained disqualified. Ducey shot back with an obstreperous fourteen-page Motion to Vacate accusing Judge Murphy of all kinds of error. Contemporaneously, Stone and Muir, proceeding pro se, filed a motion for reconsideration requesting a greater share of the funds than had been previously allotted to them.

On December 1, 2004, Judge Murphy entered an order dispersing all of the funds. This order granted Stone and Muir their request for a greater share, and the order noted that Ducey "remains **DISQUALIFIED** from representing any person in this action, and he shall have no interest in anything recovered by any person in this action." (emphasis in original.)

Ducey then filed the present appeal. He raises several arguments ranging from the superficially appealing (focusing on the differences between Missouri's and Illinois's Professional Responsibility Rules), to the preposterous (Judge Murphy lacked jurisdiction to sanction him because such authority is vested solely with the Illinois Supreme Court), to the downright audacious (Judge Murphy "allowed" Ducey to be in the case for months by not sua sponte ordering him to stop making filings). Each has fundamental

legal and factual problems, but we need not and should not address them because we lack jurisdiction to do so.

One requirement of Article III standing is that a "favorable decision will likely redress the injury." *Area Transp., Inc. v. Ettinger*, 219 F.3d 671, 672 (7th Cir. 2000) (citations omitted). In *Analytica, Inc. v. NPD Research, Inc.*, we addressed the circumstance of a law firm appealing a disqualification order without the participation of the client and held that the law firm had no standing to appeal because, absent the client's participation in the appeal, there was no reason to think the firm would be rehired. 708 F.2d 1263, 1266 (7th Cir. 1983). Therefore, the law firm had no "tangible object . . . in seeking reversal of the order disqualifying it." *Id.*

The same goes here. Ducey has not represented anyone in this case since December 2001 when Judge Webber entered his disqualification order.[2] If we reversed that order now, it would not change the fact that Ducey has not represented Stone or Muir since then. Because the case is over, a reversal of that order would also not provide Ducey with the opportunity to represent Stone and Muir. After Judge Webber's disqualification order, the case proceeded to a resolution *without* Ducey (despite the fact he continued to hang around hoping nobody would notice he had been disqualified). There is no way we can place him back in this case now.

Ducey attempts to paint Judge Murphy's December 1, 2004 order as a sanction. Ducey would have standing to

---

[2] Notwithstanding Ducey's arguments to the contrary, Judge Webber's order disqualifying him remained in effect after the case was transferred to the Southern District of Illinois. *See McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001) (explaining that the law of the case doctrine applies when a case is transferred between district courts) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988)).

appeal a monetary sanction. *Analytica*, 708 F.3d at 1266. But that is not what Judge Murphy did. Ducey, as he has told us, represented Stone and Muir on a contingent basis. Thus, Ducey gets paid if and when he wins the case for them. But Ducey *did not* win the case. It was not possible for him to do so because he was kicked out of the case back in 2001. All we read Judge Murphy's comments about Ducey's inability to collect fees to be is stating in another way that Ducey was and remained disqualified.

Ducey's real problem is that Stone and Muir have declined to give him a percentage of the $370,000 Judge Murphy awarded them. Their reluctance does not surprise us. Stone and Muir were able to garner a higher percentage of the recovery while proceeding pro se. Ducey was not their lawyer when they recovered the money and there is nothing we can do now to change that.

Ducey also cites *Walker v. City of Mesquite*, 129 F.3d 831, 832 (5th Cir. 1997), to argue that a controversy exists because his reputation has been damaged by Judge Webber's disqualification order and Judge Murphy's refusal to reverse it. Ducey fails to point out that the *Walker* court noted our precedent is the exact opposite. *See id.,* (quoting *Clark Equip. Co. v. Lifts Parts Mfg. Co.*, 972 F.2d 817, 820 (7th Cir. 1992) ("[W]e have already decided that an attorney may not appeal from an order that finds misconduct but does not result in monetary liability, despite the potential reputational effects.")).

Ducey does not ask us to reconsider our precedent, and we certainly see no reason to do so in this case. As Ducey has taken pains to point out, Judge Webber disqualified him only on the relatively innocuous basis that Ducey might be a necessary witness. We cannot see, and Ducey has not told us, how such a ruling would harm his reputation. And, anyway, Ducey has much bigger reputational problems than a disqualification order. Two months *before* Ducey vehe-

mently argued to Judge Murphy that he should not be disqualified from representing Stone and Muir, a panel of the Hearing Board of the Illinois Attorney Registration and Disciplinary Committee had already found that Ducey's representation of Stone and other former clients of Gibson's violated Rule 1.9(a) of the Illinois Rules of Professional Conduct, Conflict of Interest: Former Client. *In re Cornelius Thomas Ducey, Jr.*, No. 01 SH 118, at 54 (Sept. 2, 2004). That Hearing Board found sufficient evidence that Ducey had committed sanctionable misconduct in a number of different cases, *id.*, and so did a separate board on the basis of another complaint. *See In re Cornelius Thomas Ducey, Jr.*, No. 03 SH 123 (June 6, 2005). Both Hearing Boards recommended that Ducey's license be suspended, and he is currently suspended pending the resolution of these proceedings. Any reputational problems Ducey may have are of his own doing.

For the foregoing reasons, this appeal is DISMISSED for lack of jurisdiction.

A true Copy:

        Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*