*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2200**

State of Minnesota,
Respondent,

vs.

Jeffrey Nicholas Aase,
Appellant

**Filed February 17, 2015
Affirmed
Stauber, Judge
Concurring specially, Minge, Judge,**<sup>*</sup>

Wright County District Court
File No. 86-CR-11-270

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Thomas N. Kelly, Wright County Attorney, Buffalo, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie L. Nelson, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Minge, Judge.

---

<sup>*</sup> Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**STAUBER**, Judge

Appellant challenges his conviction for criminal sexual conduct, arguing that his trial counsel had a personal conflict of interest that denied him effective assistance of counsel. Because any conflict arose after trial was complete and appellant cannot show that the trial outcome would have been different without the claimed deficient performance, we affirm.

**FACTS**

Appellant Jeffrey Nicholas Aase was charged and tried on six counts of second-degree criminal sexual conduct involving his minor stepdaughters. The victims testified that Aase touched their vaginal areas and breasts while they would give him back rubs. Aase claimed the victims fabricated their statements because they did not like his strict parenting. Aase retained private trial counsel. Four days before trial and without informing Aase, trial counsel applied for a position at the Wright County Attorney's Office. During jury deliberations in Aase's case, trial counsel had lunch with the prosecutor, informed the prosecutor of his job application, and the prosecutor wished him "good luck." The jury found Aase guilty on all counts.

Approximately 80 candidates applied for the assistant county attorney position. About two weeks after trial, trial counsel and seven others were interviewed. Following a second interview five days later, trial counsel was offered and accepted the position. Trial counsel began employment with the county attorney's office roughly one month

later. After contacting the Minnesota Board of Professional Responsibility, trial counsel informed Aase of his new position and that he could not represent him at sentencing.

Aase subsequently filed a motion for a new trial, claiming trial counsel had a conflict of interest during his trial. The district court held an evidentiary hearing and determined that trial counsel did not have a conflict of interest until he accepted the position post trial and that trial counsel zealously represented Aase during trial. The evidentiary hearing focused on establishing the time frame of trial counsel's job application and acceptance.

Aase moved for a downward departure at sentencing. The district court denied this request and imposed concurrent sentences of 90 months and 130 months on two of the charges under Minn. Stat. § 609.343, subd. 1(h)(iii) (2010) (stating that a person is guilty of second-degree criminal sexual conduct when he engages in sexual contact with another person with whom he has a significant relationship and who was under 16 years of age at the time of the contact, and the "sexual abuse involved multiple acts committed over an extended period of time"). This appeal followed.

## D E C I S I O N

Aase claims that he was denied effective assistance of counsel because his trial counsel applied for an assistant county attorney position before his trial, creating a personal conflict of interest. Ineffective-assistance-of-counsel claims involve mixed questions of law and fact, which we review de novo. *Carney v. State*, 692 N.W.2d 888, 890-91 (Minn. 2005). A criminal defendant has the constitutional right to effective assistance of counsel, including the right to "representation that is free from conflicts of

3

interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103 (1981); *State v. Patterson*, 812 N.W.2d 106, 112 (Minn. 2012). A conflict of interest arises if "there is a significant risk that the representation of [a client] will be materially limited . . . by a personal interest of the lawyer." Minn. R. Prof. Conduct 1.7(a)(2).

The defendant bears the burden of proof when bringing an ineffective-assistance-of-counsel claim. *State v. Miller*, 666 N.W.2d 703, 716 (Minn. 2003). The defendant must "demonstrate that counsel's representation fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors." *State v. Lahue*, 585 N.W.2d 785, 789 (Minn. 1998); *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064 (1984) (holding that a defendant must show his attorney's performance was deficient in that it "fell below an objective standard of reasonableness" and that the deficient performance deprived the defendant of a fair trial, defined as "a trial whose result is reliable"). Ineffective-assistance-of-counsel claims are typically reviewed under the *Strickland* standard.

But for cases involving an actual conflict of interest, courts use a modified two-prong test. When a defendant alleges that counsel's effectiveness was undermined by a conflict of interest, but failed to object at trial, he need not demonstrate prejudice if he is able to show that the conflict of interest actually affected counsel's representation. *Cuyler v. Sullivan*, 446 U.S. at 350, 100 S. Ct. at 1719 (1980) (holding that where the same attorneys represented appellant's codefendants, who were later acquitted at separate trials, the lower court was required to consider whether the conflicting interest adversely

4

affected the appellant).  "A defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to gain relief."  *Gustafson v. State*, 477 N.W.2d 709, 713 (Minn. 1991) (quoting *Cuyler*, 446 U.S. at 349-50, 100 S. Ct. 1709 at 1719).  *But cf. State v. Paige*, 765 N.W.2d 134, 140-141 (Minn. App. 2009) (noting that "a defendant who raised no objection at trial must demonstrate that defense counsel actively represented conflicting interests and [that] this conflict adversely affected the lawyer's performance," but that where a defendant makes the  district court aware of a probable conflict and the court "fails to take adequate steps to ascertain whether an impermissible conflict exists, the defendant's conviction must be reversed without inquiry into prejudice resulting from the alleged conflict").

Representation is actually affected if "counsel was influenced in his basic strategic decisions."  *Wood v. Georgia*, 450 U.S. 261, 272, 101 S. Ct. 1097, 1103 (1981).  Similarly, representation is actually affected if "the advocate's conflicting obligations have effectively sealed his lips on crucial matters."  *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S. Ct. 1173, 1181 (1978).  We note that the *Cuyler* test for ineffective assistance of counsel is typically applied to conflict cases involving multiple representation.  *See, e.g. Caban v. United States*, 281 F.3d 778, 781-82 (8th Circ. 2002) (describing the development of the *Cuyler* standard and other ineffective-assistance-of-counsel standards involving conflicts of interest).  Aase urges us to apply the *Cuyler* standard, but fails to cite cases that apply *Cuyler* to a scenario where defense counsel applies for a job in the prosecuting attorney's office.  We apply *Strickland* here because any conflict was not

known until after trial, and, therefore, Aase could not have objected at trial. However, we reach the same outcome under both the *Strickland* and *Cuyler* tests.

**I.     Conflict of interest**

Aase first argues that his trial counsel "became personally conflicted after he decided to apply for a position with the Wright County Attorney's Office." A lawyer is prohibited from representing a client where there is a concurrent conflict of interest. Minn. R. Prof. Conduct 1.7. "[W]hen a lawyer has discussions concerning possible employment with an opponent of the lawyer's client … such discussions *could* materially limit the lawyer's representation of the client." *Id.* at cmt. 10 (emphasis added).

Aase has not demonstrated the first prong of *Strickland*: that his trial counsel rendered unreasonable representation. Trial counsel called his college friend, an assistant Wright County attorney, to ask about the working environment in the county attorney's office, but otherwise did not participate in job discussions or interviews until several weeks after the conclusion of Aase's trial. Aase claims that given the adversarial nature of a felony criminal-sexual-conduct case involving children, trial counsel would not have wanted to outshine the prosecutor. We are not persuaded. We agree with the district court's post-conviction findings: "[a]ny implication that a defense attorney would not zealously represent a client because s/he was considering a job change, even before s/he is granted an interview, flies in the face of reason." An attorney who "rolls over" on his client is not an attractive candidate.

Next, applying the *Cuyler* test, we decline to hold that the act of submitting a job application, without more, creates a per se conflict. At post-conviction proceedings, the

6

Wright County Attorney testified that over 80 people applied for the position. Trial counsel did not have his first interview until several weeks after Aase's trial concluded, and the trial prosecutor did not directly participate in the hiring process. On these facts, Aase has failed to show that his trial counsel's performance was deficient under *Strickland* and has not demonstrated an actual—and not just possible—conflict under *Cuyler*.

We note that trial counsel did not inform his client of his job application and conclude that the best practice is to inform the client and the court of any potential conflict of interest. Such notice allows the client to make a decision on representation and the court to perform a proper inquiry into the potential conflict. While we conclude that counsel's act of submitting a job application did not create a conflict, a conflict would have existed at Aase's sentencing because counsel had accepted the position by that time. At the point, substitute counsel appeared with Aase. Nonetheless, because of the importance of competent and loyal counsel, we have, as did the trial court, carefully scrutinized the entire trial record regarding trial counsel's performance.

## II.    Trial counsel's performance

Applying the traditional *Strickland* standard for reviewing ineffective-assistance-of-counsel claims, we are also unpersuaded that Aase met his burden of showing that unreasonable representation affected the outcome of the case. Aase makes several arguments to demonstrate that his trial counsel did not zealously represent him during trial due to his conflict and that this failure affected his representation. Following postconviction proceedings, the district court determined:

In the present case, the objective facts provide a clear picture of zealous representation. [Trial counsel] effective[ly] put the State to its burden of proof, vigorously engaging in cross-examination, challenging multiple jurors for cause over the State's objection, seeking to limit the evidence the State could introduce, advocating for the admission of evidence the State sought to exclude, and calling several witnesses on [Aase's] behalf. In fact, the Court recalls admiring the manner in which [trial counsel] cross-examined the child witnesses in this case. Cross-examination of child witnesses is particularly challenging; [trial counsel's] manner, tone and over-all approach was impressive. [Trial counsel] zealously advocated for his client throughout the trial; [Aase] does not point to any facts that even suggest, much less prove, otherwise.

Aase's argument that trial counsel conceded too easily to the admission of relationship evidence is without merit. The state sought to introduce relationship evidence pretrial, specifically about prior domestic abuse, to explain the victims' mother's delay in reporting the abuse to police. Trial counsel stated that he agreed with the state's analysis of the relationship evidence under Minn. Stat. § 634.20 (2014). Aase admits that trial counsel's "assessment of the evidence was not incorrect" but argues that it shows deference to the state. But where evidence is admissible, the failure of defense counsel to object to its admission does not support a claim of ineffective assistance of counsel. *State v. Schweppe*, 237 N.W.2d 609, 616 (Minn. 1975). Further, trial counsel requested a cautionary instruction for the relationship evidence, although not until the close of trial rather than immediately after the admission of the other-acts evidence. The timing of this request was a matter of trial strategy, perhaps to avoid drawing attention to the potentially harmful evidence, and strategy decisions are not subject to ineffective-counsel claims. *State v. Bobo*, 770 N.W.2d 129, 138 (Minn. 2009).

8

Further, trial counsel did object to the proffered evidence that Aase choked or put his hands around the neck of C.S., the victims' sibling, arguing it was too prejudicial to admit in a case involving sexual conduct, and not domestic abuse. Under the Domestic Abuse Act, the statutory definition of domestic abuse includes criminal sexual conduct. Minn. Stat. § 518B.01 (2010). Clearly C.S., the victims, and Aase are family members within the meaning of the statute: they are sisters and a stepfather who reside in the same household. The relationship evidence would be admissible under caselaw. *See State v. Barnslater*, 786 N.W.2d 646, 651 (Minn. App. 2010) (stating that "the admissibility of relationship evidence is based on whether the accused's underlying conduct constitutes domestic abuse . . . not on whether the particular offense that was charged is listed" in the statute defining domestic abuse), *review denied* (Minn. Oct. 27, 2010). The objection to the alleged choking of C.S. was appropriate. C.S. was not a victim in this prosecution and the evidence was graphic. The district court overruled the objection in a preliminary ruling but gave trial counsel an opportunity to raise it again, which he did before C.S. testified, arguing that choking is not similar conduct. For these reasons, we conclude that trial counsel's failure to object to the admission of some relationship evidence under section 634.20 was not unreasonable.

Trial counsel also called several witnesses and cross-examined many of the state's witnesses. While Aase identifies ways in which trial counsel could have performed differently, our careful review of the trial transcript shows that trial counsel participated professionally throughout the trial process and that the alleged deficiencies cannot be shown to be anything other than trial tactics and strategy. Our review of the trial

9

transcript demonstrates that trial counsel zealously represented Aase throughout the criminal proceeding.

In sum, Aase has not shown that trial counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2052. And even if appellant could show defective trial counsel performance, he has failed to meet the second *Strickland* prong: that but for his trial counsel's performance, the trial outcome would have been different. Alternatively, Aase has not shown that trial counsel's job application actually affected his performance. *See Cuyler*, 446 U.S. at 348, 100 S. Ct. at 1718. We therefore conclude that Aase has not met his burden to show that his trial counsel was ineffective, and he therefore is not entitled to a new trial. The evidence admitted at trial strongly supported a guilty verdict: the victims testified consistently and the jury believed their testimony.

**Affirmed.**

**MINGE**, Judge (concurring specially)

I concur in the disposition and in the conclusion that the record indicates that the conflict of interest of appellant's trial counsel was not prejudicial. I write separately to express my disagreement with the point at which the conflict occurred and the legal framework used to evaluate appellant's conflict-of-interest claim.

I submit that the conflict and improper conduct occurred when defense counsel filed an application for the opening in the office of the Wright County Attorney. *See* Minn. R. Prof. Conduct 1.7 2005 cmt. 10 ("[D]iscussions of possible employment . . . with a law firm representing opponent . . . could materially limit the lawyer's representation of the client."). At the time of application, counsel had an obligation to disclose his job-seeking effort to his client (appellant) and either obtain his client's consent or withdraw from representation. *See id.* at 1.7(b)(4) (addressing need for consent or withdrawal). Once one's defense attorney has applied for a position with the prosecution, that attorney's loyalty is subject to question. There is an appearance of impropriety.

That the assistant county attorney handling the prosecution was unaware of defense counsel's application does not resolve the conflict. Defense counsel did not know whether opposing courtroom counsel was a part of the hiring process. Most importantly, defense counsel's loyalty to appellant, his client, is implicated. The legal system is built on the trust that a client has in his attorney's fidelity. Minn. R. Prof. Conduct 1.7 2005 cmt. 1; *see State v. 3M Co.*, 845 N.W.2d 808, 817-18 (Minn. 2014) (in discussing a waiver of conflict of interest, the court emphasized the need to "'uphold high ethical

standards in the legal profession'"). For the rest of his life, appellant may be haunted with the suspicion that his attorney had a double agenda, that his attorney's overriding personal interest was in obtaining a position with the prosecution, and that he, the client, may have been acquitted but for this perceived conflict.

The other point at which I disagree with the majority is the standard for evaluating appellant's claim. I would shift the burden of proof to the state to establish that defense counsel's divided loyalty did not prejudice appellant. Claims of ineffective assistance of counsel are generally considered under the *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). The majority also indicates that in this conflict-of-interest area, the appropriate approach may be that set forth in the case of *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 1718 (1980), a precursor of *Strickland*. With the *Cuyler* standard, the convicted person only has the burden of showing that the conflict of interest actually affected the adequacy of legal representation. *Id.* These tests are rarely met. Invariably, the courts conclude that the accused failed to establish that the ineffective assistance was prejudicial or affected actual representation. Demonstrating actual prejudice or an actual inadequacy in representation is a formidable uphill challenge. There are many explanations for how a trial lawyer handles the dozens of discrete decisions in handling a case. They are termed "trial strategy."

In a criminal case, the accused is accorded a presumption of innocence and conviction requires that the prosecution prove every element of the crime beyond a reasonable doubt. When a fundamental right such as the undivided loyalty of one's defense counsel has been compromised, our standard should adhere to the rationale

underlying the presumption of innocence and burden of finding proof beyond a reasonable doubt. In a criminal prosecution, the legal system itself should have the burden of undertaking a thorough review of the proceedings and establishing that the representation provided was not compromised. *See 3M Co.*, 845 N.W.2d at 819-20 (recognizing that the party asserting waiver of opportunity to object to legal counsel's conflict of interest has burden to showing waiver). The accused should not have the burden of proving the negative.

Because of the thorough review that this panel has undertaken of the record and the conclusions that it has reached, I concur that in this case the legal system properly found that appellant's trial attorney provided not only professional, but good quality criminal-defense representation to appellant and that his conflict of interest did not adversely affect his performance, let alone the result. For this reason, I would affirm the conviction despite my differences with the majority.