In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-2525

EAST CENTRAL ILLINOIS PIPE TRADES HEALTH AND WELFARE
FUND and PLUMBERS AND STEAMFITTERS U.A. LOCALS 63; 353
PENSION TRUST FUND,

*Plaintiffs-Appellants*,

*v.*

PRATHER PLUMBING & HEATING, INC.,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:18-cv-1434 — **Joe Billy McDade**, *Judge*.

———————————

ARGUED FEBRUARY 18, 2021 — DECIDED JULY 7, 2021

———————————

Before BRENNAN, SCUDDER, and KIRSCH, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Two ERISA-covered employee benefit funds filed suit in federal court to hold a newly formed, family-run plumbing company liable for an existing ERISA judgment on the basis that it stepped into the predecessor family company's obligations. The funds rooted their claim in the federal common law doctrine of successor

liability and contended that was enough to show their claim arises under federal law and therefore raises a federal question properly in federal court under 28 U.S.C. § 1331. The district court agreed, proceeded to the merits, and concluded it would be inequitable to hold the new entity responsible for the other's unpaid plan contributions on a theory of successor liability. We see the jurisdictional analysis differently.

All agree that the funds seek to impose liability under federal common law. But that alone does not suffice to show a claim "arising under" federal law for purposes of establishing federal question jurisdiction. Supreme Court precedent tells us that in these circumstances the funds needed to go further and identify a source of law supplying them a federal cause of action—a federal law authorizing them to sue in federal court on their claim. Section 1331, the federal question jurisdiction statute, does not itself create or supply that cause of action here. Nor have the funds identified any other statute authorizing their action in federal court. That shortcoming requires dismissal.

# I

## A

This appeal presents a tale of two family-owned plumbing companies in Peoria, Illinois. Robert Prather formed the original Prather Plumbing Inc. in 2004 and hired three of his sons—David, Kirk, and Clint—to work in the business. At the outset, Prather Plumbing signed an agreement with the Local 63 Plumbing and Pipefitters Union, which bound the company to the union's collective bargaining agreement with the Mid-Illini Mechanical Contractors Association. Among other obligations, this agreement required Prather Plumbing to

contribute to two multiemployer funds that provide employees with health care and pension benefits. At some point, Prather Plumbing fell behind in making contributions and the pension fund sued in October 2010 to recover the amounts owed. The parties settled in January 2011, but Prather Plumbing then continued to miss its payments.

In the meantime, one of Robert's sons, David, formed a new, non-union-affiliated company in May 2012 under the name Prather Plumbing & Heating Inc., or PPHI. Over the span of two months that summer, David's new company purchased $25,024 in physical assets from his father's company, hired some of his father's employees (including his brothers Kirk and Clint), and began serving clients. Around the same time, David's father shuttered the original Prather Plumbing.

Three weeks after Prather Plumbing closed its doors, the pension and welfare funds sued the company in federal court under ERISA, 29 U.S.C. §§ 1132 and 1145, to recover delinquent contributions owed between January 2008 and December 2011. Prather Plumbing never responded to the complaint so the district court entered a default judgment for the funds in January 2013, ordering the company to pay $293,183.06 plus $5,954 in costs and attorney's fees.

In attempting to recover this judgment, the funds learned that Prather Plumbing was insolvent and that PPHI, David's new company, had acquired some of the original company's employees and assets. In November 2018 the funds filed a new lawsuit in federal court against PPHI alone. In this second lawsuit, the funds raised a single claim under a theory of successor liability. That equitable doctrine can be used to hold one entity responsible for the obligations of another when there are sufficient indicia of continuity between the two

entities and the alleged successor has notice of the predecessor's liability. See *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 43 (1987) (explaining the proper successor liability analysis); *Indiana Elec. Workers Pension Benefit Fund v. ManWeb Servs., Inc.* (*ManWeb II*), 884 F.3d 770, 777–78 (7th Cir. 2018) (describing the test for successor liability). According to the funds, the facts warranted holding PPHI responsible as a successor for Prather Plumbing's failure to contribute its fair share to the funds.

B

The parties completed discovery and filed cross-motions for summary judgment, with each waging competing arguments on the question of successor liability. For its part, PPHI also maintained that the district court lacked federal jurisdiction over the action and that the funds had no standing to sue.

The district court rejected PPHI's jurisdictional challenge, observing that successor liability is a federal common law doctrine and, therefore, the funds' complaint raised a claim "arising under" federal law within the meaning of 28 U.S.C. § 1331. The district court also determined that the funds alleged plenty to establish Article III standing.

On the merits of the funds' successor liability claim, the district court entered summary judgment for PPHI. The court saw the question of successorship as close, because some evidence suggested continuity of operations between the two companies and that David Prather, as the owner of the newly-formed PPHI, had sufficient notice of Prather Plumbing's outstanding liability to the funds. In the end, though, considerations of equity swayed the district court in PPHI's favor. It would be too inequitable, the district court reasoned, to

impose nearly $300,000 in liability when David Prather purchased only $25,024 in physical assets from Prather Plumbing. At bottom, the district court saw "a son, unhappy with his career at his father's business, who branched out and started his own enterprise, not a father who groomed a son to take over the family business under a different name." PPHI, the district court concluded, should not be held liable for Prather Plumbing's delinquency.

The funds now appeal.

## II

We begin at the same place as the district court—with the threshold issue of subject matter jurisdiction—but reach a different conclusion. Because we conclude the district court lacked jurisdiction, we do not reach the funds' argument that they presented a triable issue on successor liability.

## A

While state courts are courts of general jurisdiction—essentially open to all comers on all matters—federal courts are courts of limited jurisdiction. See *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 10–11 (1799); Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3522 (3d ed. 2021). Federal courts can exercise judicial power only over those categories of Cases and Controversies authorized in the Constitution and by Congress. See *Kokkonen*, 511 U.S. at 377. This precept follows from the reality that the Constitution itself did not create the lower federal courts, but instead authorized Congress to do so. See U.S. Const. art. III, § 1. This primary authority to create the lower federal courts—what Article III calls the "inferior Courts"—brings with it the secondary

authority to define their jurisdiction. See *Patchak v. Zinke*, 138 S. Ct. 897, 906 (2018) (citing *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33 (1812)).

We also know from Article III that the judicial power extends to all cases "arising under this Constitution" and "the Laws of the United States," among other categories. U.S. Const. art. III, § 2. Congress has implemented that authorization by enacting the federal question jurisdiction statute. See *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). It first did so in 1875, and amended that enactment on a few occasions, most recently in 1980 to eliminate an amount-in-controversy requirement. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376–77 (2012); Wright & Miller, *Federal Practice and Procedure* § 3561. Congress houses today's federal question jurisdiction statute in 28 U.S.C. § 1331.

The funds' suit does not suffer from any jurisdictional defect under Article III. They have presented a justiciable controversy by alleging that PPHI owes them for Prather Plumbing's unpaid judgment for delinquent contributions. The allegations suffice to establish standing and a dispute ripe for resolution through the judicial process. See *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797–98 (2021); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998).

But things begin to fall apart—and in the end, collapse—when we turn to the statutory basis for jurisdiction. The funds contend that the district court has authority to adjudicate the merits of their claim under 28 U.S.C. § 1331. This provision confers jurisdiction over federal questions by providing that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As the funds see it, their

action to impose successor liability arises under federal law because successor liability is a federal common law doctrine and, therefore, the action necessarily presents a federal question.

For a case to satisfy § 1331 by "arising under" federal law, however, it is not enough for a plaintiff to merely call upon a constitutional provision, a federal statute, or a principle of federal common law in the complaint. See *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 24, 27–28 (1983) (rejecting the argument that "any state court action which would require the interpretation or application of ERISA to a plan document 'arises under' the laws of the United States" and dismissing for want of federal jurisdiction). That is because the term "arising under" in § 1331 carries special meaning. See *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494–95 (1983); see also Wright & Miller, *Federal Practice and Procedure* § 3562.

The Supreme Court has recognized two ways in which a case can arise under federal law and satisfy § 1331. "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (citing *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)). This category—lawsuits raising federal causes of action—"accounts for the vast bulk of suits that arise under federal law." *Id.* A federal cause of action can come in two forms: express or implied. See *Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 90 (1981); Wright & Miller, *Federal Practice and Procedure* § 3563. An express cause of action is one explicitly conferred by federal statute. Think, for example, of 42 U.S.C. § 1983, the civil rights statute permitting suits against state actors. An implied cause of

action, on the other hand, is less common—and intentionally so, as these actions stem from judicial inferences regarding Congress's intent and not from the direct text of a statute. The implied category includes, for instance, an action against federal officers under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), or a private right of action for securities fraud under the Securities Exchange Act of 1934, see *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014). No matter the source, a federal cause of action raised on the face of a complaint satisfies § 1331.

The second way of meeting the arising-under requirement is much narrower. In the absence of a federal cause of action, a suit may nevertheless "aris[e] under" federal law in those circumstances where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); see also *Smith v. Kansas City Title & Tr. Co.*, 255 U.S. 180, 199 (1921).

Without a federal cause of action—and outside the rare circumstance described in *Grable*—a federal court cannot exercise federal question jurisdiction and has no authority to adjudicate the dispute under § 1331.

B

These principles apply with full force in the present context, where the funds invoked the doctrine of successor liability to hold PPHI responsible for a judgment entered against Prather Plumbing. The Supreme Court confronted a threshold question of federal jurisdiction in a similar circumstance

in *Peacock v. Thomas*, 516 U.S. 349 (1996). Although the fact pattern in *Peacock* did not raise a question of successor liability and instead dealt with whether a federal court had jurisdiction over an action to pierce the corporate veil and hold an officer responsible for a money judgment owed by a company, the Court's approach to the jurisdictional issue informs our own analysis here.

Jack Thomas won a $187,628.93 judgment in an ERISA class action suit against his employer, Tru-Tech, Inc., for mismanaging the company's pension benefits plan. See *Peacock*, 516 U.S. at 351. Tru-Tech did not pay, so Thomas filed a new lawsuit against D. Grant Peacock, an officer and shareholder of Tru-Tech. See *id.* at 351–52. In this second suit, Thomas alleged that Peacock violated state law by fraudulently conveying and conspiring to siphon Tru-Tech's assets to avoid paying the judgment. See *id.* at 352. The complaint also raised a claim for "Piercing the Corporate Veil Under ERISA and Applicable Federal Law," seeking to hold Peacock vicariously responsible for Tru-Tech's liability. See *id.*

The Supreme Court held that the district court possessed neither federal question jurisdiction nor ancillary jurisdiction over Thomas's second lawsuit. See *id.* at 353–54, 357–58. Thomas could not invoke federal question jurisdiction, the Court explained, because he failed to identify a cause of action under ERISA or any other federal statute that permitted the suit. See *id.* at 353–54. Although ERISA contains an explicit cause of action for civil enforcement of certain substantive provisions, see 29 U.S.C. § 1132(a), no part of Thomas's complaint alleged a violation of ERISA. See *id.* at 353. Nor could Thomas's veil piercing claim support federal jurisdiction because "[p]iercing the corporate veil is not itself an

independent ERISA cause of action," but instead reflects a means of imposing liability based on an underlying cause of action. *Id.* at 354. The Court also rejected Thomas's alternative invocation of ancillary jurisdiction, reasoning that it had "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357–58.

We applied this same framework to the facts in *McCleskey v. CWG Plastering, LLC* and determined there that the plaintiff funds had adequately invoked a federal cause of action, so the district court's jurisdiction was sound. See 897 F.3d 899 (7th Cir. 2018). Two funds had secured a nearly $200,000 judgment against Gianino Plastering for delinquent payments owed under a collective bargaining agreement. See *id.* at 901. Gianino abruptly closed before paying up, and the owner's son opened a new business the same day the judgment was entered, hiring his father's employees, taking on some of his customers, and completing his outstanding plastering jobs. See *id.* at 900–01.

The funds brought a new lawsuit against the son's business to hold it responsible for both Gianino's judgment debt and continuing collective bargaining obligations. See *id.* at 901. On the former, the funds claimed that the son's company was responsible for the $200,000 judgment on a successor liability theory. See *id.* On the latter, the funds alleged the son's company was an alter ego of the now-defunct Gianino Plastering, meaning it assumed Gianino's contractual obligations and was therefore actively violating ERISA and the National Labor Relations Act by failing to comply with the collective bargaining agreement. See *id.*

This second lawsuit belonged in federal court because, unlike in *Peacock*, the funds alleged that the son's business was "engaged in an ongoing violation of the NLRA and ERISA by failing to comply with an extant collective bargaining agreement." *Id.* at 902–03. In that way, the funds properly invoked the causes of action for civil enforcement in the ERISA statute, 29 U.S.C. § 1132, and in the NLRA, 29 U.S.C. § 185(a), which provided an independent basis for federal subject matter jurisdiction over the second suit. See *id.* at 901, 903; see also *id.* at 906 (Easterbrook, J., concurring) ("Because the Funds seek to recover from CWG Plastering directly under two federal statutes, the district court has subject-matter jurisdiction.").

C

Guided by these precedents, the proper analysis of subject matter jurisdiction here is clear.

Recall that the funds' complaint alleged that PPHI, as a successor to the now-defunct Prather Plumbing Inc., is liable for the amounts Prather Plumbing owes to the funds. We have recognized that successor liability in the ERISA domain is a creation of federal common law. See *Tsareff v. ManWeb Servs., Inc.* (*ManWeb I*), 794 F.3d 841, 845 (7th Cir. 2015). In that sense, the funds' complaint implicates federal law. But it does not necessarily follow that federal law has also created a cause of action to enforce this doctrine in federal court.

The funds maintain that § 1331, the federal question jurisdiction statute, supplies the necessary authority to bring their successor liability claim in federal court. The funds have it backwards. It is "when federal law creates a private right of action and furnishes the substantive rules of decision [that] the claim arises under federal law, and district courts possess

federal-question jurisdiction under § 1331." *Mims*, 565 U.S. at 378–79. A federal right of action is a separate requirement, and § 1331 does not *itself* provide a right of action. See *Int'l Union of Operating Eng'rs, Loc. 150 v. Ward*, 563 F.3d 276, 281 (7th Cir. 2009) ("Thus, when the basis of the action is a federal statute, a federal cause of action must exist as well for a federal court to hear a given claim; the general grant of federal question jurisdiction contained in § 1331, without a federal cause of action, is not enough.").

Nor does the funds' complaint purport to bring any cause of action supplied by ERISA. And for good reason, as "ERISA does not provide an enforcement mechanism for collecting judgments." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833 (1988); see also *Peacock*, 516 U.S. at 353 ("We are not aware of, and Thomas does not point to, any provision of ERISA that provides for imposing liability for an extant ERISA judgment against a third party.").

Although the funds cite two provisions of ERISA in their jurisdictional statement on appeal—the civil enforcement provision, 29 U.S.C. § 1132, and the provision mandating that employers contribute to multiemployer benefits plans, *id.* § 1145—neither section authorizes a lawsuit to hold a successor liable for a prior ERISA judgment. Rather, § 1132 provides a right of action for persons, including employee benefits plans, to enforce § 1145, but the funds' complaint does not purport to hold PPHI liable for violating § 1145. See *Auto. Mechanics Loc. 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 744 (7th Cir. 2007) (explaining that "[§] 1132(e) complements § 1145 by authorizing certain parties to enforce the substantive right").

As in *Peacock*, and in contrast to *McCleskey*, the funds' complaint lacks any allegation that PPHI violated any collective bargaining agreement or any provision of ERISA. Compare *Peacock*, 516 U.S. at 354 ("Because Thomas alleged no 'underlying' violation of any provision of ERISA or an ERISA plan, neither ERISA's jurisdictional provision, 29 U.S.C. § 1132(e)(1), nor 28 U.S.C. § 1331 supplied the District Court with subject-matter jurisdiction over this suit."), with *McCleskey*, 897 F.3d at 902–03 ("In our case, the Funds argue that CWG is engaged in an ongoing violation of the NLRA and ERISA by failing to comply with an extant collective bargaining agreement."). So the funds have not raised an ERISA cause of action.

Finally, the funds have neither identified any implied federal right of action to impose successor liability on a third party, nor argued that the ERISA statute contains such an implied right of action. To be sure, we have recognized the successor doctrine as a means of holding one party liable when the lawsuit contains some independent federal cause of action. See, *e.g.*, *ManWeb I*, 794 F.3d 841; *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323 (7th Cir. 1990). We are aware of no case, however, recognizing a standalone federal right of action to collect an ERISA judgment against an alleged successor, and we decline to create a private right of action where the statute has not. See *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.").

Without a federal cause of action, the only way the funds' successor liability claim may "arise under" federal law is through the narrow category recognized in *Grable*—those

cases involving a federal issue that is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disturbing the congressionally approved balance between federal and state courts. See 545 U.S. at 314. This "special and small category" is exceedingly slim, and it is difficult for us to see how the funds' highly fact-bound successor liability claim necessarily raises any federal issue that is so important to the federal system as a whole that it warrants the availability of a federal forum. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699–701 (2006) (determining that a state law claim to recoup benefits paid under a federally created health insurance plan for federal employees did not raise a substantial federal issue); see, *e.g., Gunn*, 568 U.S. at 258, 260–64 (explaining the requirement that the federal issue be "substantial" and concluding a patent issue in a state legal malpractice action was not sufficiently "significant to the federal system as a whole" to merit federal jurisdiction); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007) (reasoning that federal jurisdiction was lacking where, unlike in *Grable*, the case involved "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law").

In any event, the funds made at most a fleeting suggestion that their action necessarily depends on resolving a question of federal law. But we know from the Supreme Court's teachings that this undeveloped assertion is not enough to show that the action should be "squeezed into the slim category *Grable* exemplifies." *Empire Healthchoice*, 547 U.S. at 701. Future cases are sure to present more difficult questions in this narrow area of the law of federal jurisdiction.

All told, it does not matter that this dispute involves the application of a federal common law doctrine and indirectly concerns obligations under ERISA. The funds have no vehicle to bring their standalone claim for successor liability into federal court, as the claim does not "arise under" federal law within the meaning of § 1331.

### D

The funds urge an alternative analysis to distinguish this action from *Peacock*—one that focuses on the nature of the alleged liability as direct or vicarious and draws from our decision in *Board of Trustees, Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031 (7th Cir. 2000). The veil piercing liability addressed in *Peacock* is vicarious, the funds submit, whereas alter ego and successor liability are both forms of direct liability that should be treated differently. But this framing of the legal analysis sidesteps the threshold cause-of-action inquiry.

In *Elite Erectors*, we reasoned that alter ego liability arguments are, in substance, claims for direct liability under ERISA, because they allege that a new company is one and the same as the old company and has therefore violated ERISA by failing to comply with the contractual obligations of the old company. See *id.* at 1038 ("[A] contention that *A* is *B*'s 'alter ego' asserts that *A* and *B* are *the same entity*; liability then is not vicarious but direct."). In that situation, a fund can invoke the cause of action in ERISA, 29 U.S.C. § 1132, to pursue a claim against the alleged alter ego for itself violating ERISA.

Contrast the allegations in *Elite Erectors* to the complaint here. The funds do not maintain that PPHI has directly

violated ERISA, either as an alter ego of Prather Plumbing or in its own right. The only claim the funds raise is for successor liability, with the aim of holding PPHI equitably responsible for the unpaid obligations of Prather Plumbing. As there is no federal statutory right of action for successor liability under ERISA, nor a judicially recognized private implied right of action, the funds have failed to demonstrate that this claim arises under federal law.

*     *     *

Without subject matter jurisdiction, we lack authority to consider the merits. The district court's judgment is VACATED and the action is REMANDED with instructions to dismiss for want of federal jurisdiction.