*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1534**

Northern Metals, LLC,
Respondent,

vs.

Minnesota Pollution Control Agency, et al.,
Defendants,

Crow Wing Recycling, Inc., et al.,
Appellants.

**Filed May 20, 2024
Affirmed
Gaïtas, Judge**

Ramsey County District Court
File No. 62-CV-23-1935

Patrick H. O'Neill, Jr., Patrick H. O'Neill, III, Matthew B. Bolt, Larson ᐧ King, LLP, St. Paul, Minnesota; and

Libretta P. Stennes, Taylor R. McKenney, Greenberg Traurig, LLP, Minneapolis, Minnesota; and

Joseph G. Maternowski, Will M. Florek, Hessian and McKasy, P.A., Minneapolis, Minnesota (for respondent)

Jack Y. Perry, Jason R. Asmus, Brayanna J. Smith, Taft Stettinus & Hollister LLP, Minneapolis, Minnesota (attorneys pro se and for appellants)

Considered and decided by Frisch, Presiding Judge; Worke, Judge; and Gaïtas, Judge.

**GAÏTAS**, Judge

This is an interlocutory appeal from a district court order disqualifying attorneys from representing a defendant in an environmental action brought by the attorneys' former client. Appellants Crow Wing Recycling, Inc., d/b/a Nordic Metals, LLC (Crow Wing Recycling) and Crow Wing Recycling's attorneys, who are also parties to this appeal, contend that the district court lacked subject-matter jurisdiction to consider the disqualification motion of the former client, respondent Northern Metals, LLC, and abused its discretion in determining that the attorneys are disqualified from representing Crow Wing Recycling. We reject both arguments and affirm.

## FACTS

Crow Wing Recycling and Northern Metals are competitors in the metal-recycling business. In 2023, Northern Metals initiated a civil action against Crow Wing Recycling, the Minnesota Pollution Control Agency (the MPCA), and MPCA commissioner Katrina Kessler, claiming violations of the Minnesota Environmental Rights Act (MERA), Minn. Stat. §§ 116B.01-.13 (2022), and the public-trust doctrine. The complaint alleges that Crow Wing Recycling is releasing pollutants into the environment without proper permitting and pollution controls in place.

Crow Wing Recycling retained the law firm of Taft Stettinius & Hollister, LLP, and attorneys Jack Y. Perry, Jason R. Asmus, and Brayanna J. Smith (collectively referred to as counsel) to represent it in the lawsuit. From 2012 to 2016, Perry and his law firm, which was later acquired by Taft, represented Northern Metals in interactions with the MPCA

2

and other matters. Asmus, who worked with Perry at the law firm, represented Northern Metals in 2015 and 2016 in proceedings involving the MPCA and other matters.

Northern Metals notified Crow Wing Recycling that it did not consent to counsel representing Crow Wing Recycling, and asked counsel to withdraw. Counsel declined to do so. In response, Northern Metals moved to disqualify counsel under Minnesota Rules of Professional Conduct 1.9 and 1.10. Following a hearing, the district court granted the motion and disqualified counsel from representing Crow Wing Recycling in the matter. It is this disqualification order that is the subject of this appeal.

Northern Metals operates a plant in Becker that recycles scrap metal. Crow Wing Recycling recently constructed a metal-shredding facility in Ironton. Both companies operate under air permits issued by the MPCA. Northern Metals is subject to an individual state air permit to ensure, among other things, that hazardous and volatile materials are not emitted into the environment. This permit includes extensive monitoring requirements. The complaint alleges that Crow Wing Recycling has been operating under an Option D registration permit, which applies to facilities with lower-level emissions, rather than an individual state air permit. Northern Metals alleges that Crow Wing Recycling has expanded its operations and that the expansion has caused Crow Wing Recycling's facility to release more pollutants. Yet, it alleges, Crow Wing Recycling continues to operate under the less-stringent Option D permit. Northern Metals further alleges that, although the MPCA was aware of Crow Wing Recycling's operations, it did not conduct an inspection of the plant until Northern Metals notified it of Crow Wing Recycling's

3

activities and it has not compelled Crow Wing Recycling to apply for an individual state air permit.

Northern Metals' complaint asserts three counts against Crow Wing Recycling, the MPCA, and the commissioner. Count I alleges that the MPCA violated MERA by issuing a registration permit to Crow Wing Recycling that is "inadequate to protect the environment from mercury and other pollutants." *See* Minn. Stat. § 116B.10. Count II alleges that Crow Wing Recycling is operating without the necessary environmental controls, in violation of MERA. *See* Minn. Stat. § 116B.03. And count III asserts a common-law claim under the public-trust doctrine against the MPCA and Crow Wing Recycling, alleging "deleterious impacts to navigable bodies of water" near Crow Wing Recycling's facility as a result of "the uncontrolled mercury emissions produced by [Crow Wing Recycling's] operations."[1] Northern Metals' complaint requests the district court to enjoin Crow Wing Recycling from operating until it obtains an individual state air permit from the MPCA and complies with regulatory requirements.

In Crow Wing Recycling's answer to Northern Metals' complaint—which identified counsel as Crow Wing Recycling's attorneys—Crow Wing Recycling denied the allegations in the complaint and moved to stay counts I and II indefinitely, pending MPCA's completion of its review of Crow Wing Recycling's Ironton facility in an

---

[1] The public-trust doctrine "entrusts the states with navigable waters and the consequent right to use or dispose of any portion thereof, when that can be done without substantial impairment of the interest of the public in the waters." *White Bear Lake Restoration Ass'n ex rel. State v. Minnesota Dep't of Nat. Res.*, 946 N.W.2d 373, 385 (Minn. 2020) (quotation omitted).

administrative proceeding. On the same date, Crow Wing Recycling moved to dismiss count III on the ground that the common-law public-trust-doctrine claim applies exclusively to the state or its agencies, but not to private-property owners or permittees, such as Crow Wing Recycling.[2]

In subsequently moving to disqualify counsel from representing Crow Wing Recycling, Northern Metals asserted that attorneys Perry and Asmus had previously represented Northern Metals "on substantially related issues" from 2012 to 2016, during which time counsel "obtained confidential information as part of the prior representation that has neither become public since then nor rendered obsolete over the passage of time." Northern Metals further claimed that there was a "clear" factual and legal overlap between counsel's former representation of Northern Metals and the current matter. In support of the motion to disqualify, Northern Metals submitted the affidavit of an attorney expert, who opined that counsel was disqualified due to a conflict of interest. Additionally, Northern Metals submitted affidavits from its chief operating officer and its current counsel. The chief operating officer stated that Perry and Asmus handled "multiple matters for Northern Metals involving air permitting and Northern Metals' metal shredding operations under Minnesota laws and MPCA requirements" in three separate proceedings. Northern Metals' current counsel discussed Perry and Asmus's involvement with the company from 2015 to 2016, which included lobbying, discussions about the company's

---

[2] The MPCA also filed a motion to dismiss, arguing that Northern Metals failed to state a claim on which relief could be granted and that there was not a private right of action under the public-trust doctrine. The district court stayed the motion. The MPCA has not filed a brief on appeal.

relocation from Minneapolis to Becker, and settlement discussions with the MPCA concerning Northern Metals' air permit. Crow Wing Recycling opposed the motion to disqualify, filing responsive memoranda and supporting materials, including the affidavit of an expert who opined that counsel did not have a conflict of interest as a result of the prior representation of Northern Metals.

After a hearing on Northern Metals' motion to disqualify counsel, the district court granted the motion in a written order. The district court analyzed each of the three claims in the complaint when assessing whether a substantial relationship existed that would require disqualification. It concluded that there was significant overlap—indicating a substantial relationship—between Perry and Asmus's former representation and the facts alleged in counts I and III, but not in count II.

As to counts I and III, the district court determined that there was a significant overlap between Perry and Asmus's former representation of Northern Metals and the current matter. Specifically, the district court noted that their representation of Northern Metals "extended to gathering information from Northern Metals, meeting with experts, and advising Northern Metals about what the MPCA could be persuaded to accept and permit with regard to controls on a metal recycling facility necessary to protect Minnesota's natural resources." These issues were implicated by counts I and III of Northern Metals' complaint. The district court reasoned that when addressing the adequacy of Crow Wing Recycling's permit, the district court would have to consider whether smaller metal-recycling facilities, which operate under the less stringent Option D permits, would be "sufficiently protective" of the environment. And it stated, "The factual issues involved in

6

that question overlap significantly with the matters on which former counsel represented Northern Metals." The district court stated that "[t]hose factual issues involve measurement, monitoring, abatement, and reporting, as well as the expert opinions and the costs associated" with environmental monitoring and compliance. According to the district court, former counsel obtained confidential information from Northern Metals during the course of its representation and failed to rebut the presumption that they "had access to experts and expert opinions and thought processes relating to the same subjects." Based on these findings, the district court concluded that there was both legal and factual overlap with respect to counts I and III.

The district court determined that Perry and Asmus's representation of Northern Metals was not substantially related or relevant to count II. However, based on its determination that there was a significant overlap with counts I and III, it ultimately decided that disqualification was required. Therefore, the district court ordered that Perry, Asmus, and Taft were disqualified from representing Crow Wing Recycling in the present action as a whole. Having made this determination, the district court stayed the pending dismissal motions to allow Crow Wing Recycling to obtain new counsel.

Crow Wing Recycling and counsel appeal.[3]

---

[3] In October 2023, counsel joined Crow Wing Recycling in appealing the district court's disqualification order. An attorney has standing to appeal, independent of the attorney's client, when a district court finds that the attorney violated the rules of professional conduct and disqualifies the attorney from the representation. *State ex rel. Swanson v. 3M Co.*, 845 N.W.2d 808, 815 (Minn. 2014); *see also* Minn. R. Civ. App. P. 103.02, subd. 1 (allowing joint appeals by parties entitled to appeal from same action where joinder is practicable).

**DECISION**

There are two issues presented on appeal. First, Crow Wing Recycling and counsel argue that the district court erred by failing to determine, as a threshold matter, whether it had subject-matter jurisdiction over Northern Metals' action. They contend that, because the district court did not have subject-matter jurisdiction over the lawsuit, the district court had no authority to rule on Northern Metals' motion to disqualify. Second, and in the alternative, Crow Wing Recycling and counsel argue that the district court abused its discretion by disqualifying counsel from representing Crow Wing Recycling under the rules of professional conduct because there is not a significant factual or legal overlap between the former matters—in which Perry, Asmus, and their law firm represented Northern Metals—and the current matter.

**I.     The district court had jurisdiction to consider Northern Metals' disqualification motion.**

For the first time on appeal, Crow Wing Recycling and counsel argue that the district court erred by ruling on Northern Metals' disqualification motion because the district court did not have subject-matter jurisdiction over counts I and II of the complaint. Crow Wing Recycling and counsel appear to contend that Northern Metals improperly sought judicial review of the claims raised in counts I and II, which should have been addressed in the MPCA's pending administrative proceeding. Based on this premise, they argue that the district court lacked subject-matter jurisdiction and therefore had no authority to disqualify counsel.

8

An appellate court reviews "[q]uestions concerning the authority and jurisdiction of [district] courts" de novo. *State v. Pflepsen*, 590 N.W.2d 759, 763 (Minn. 1999). We reject the argument that the district court lacked subject-matter jurisdiction to consider the attorney disqualification motion. Attorney disqualification is a "special proceeding under the court's inherent power to supervise the attorneys who appear before it." *In re Est. Janecek*, 610 N.W.2d 638, 642 (Minn. 2000). A special proceeding is "such a proceeding as may be commenced independently of a pending action by petition or motion, upon notice, in order to obtain special relief." *Chapman v. Dorsey*, 41 N.W.2d 438, 441 (Minn. 1950). Such a proceeding "adjudicates by final order a substantial right distinct from any judgment entered upon the merits of the original action." *In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 756 (Minn. 2005) (quotation omitted); *see also* Minn. R. Civ. App. P. 103.03(g) (providing that an appeal "may be taken . . . from a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding"). Here, the disqualification matter was a special proceeding, independent of the merits of the underlying environmental action. Accordingly, we conclude that the district court properly exercised its inherent power over the attorneys appearing in the case in the manner provided by established Minnesota caselaw. *See Janecek*, 610 N.W.2d at 642.

Counsel argue that, under some federal caselaw, a district court must first address whether it has subject-matter jurisdiction before turning to other issues, such as attorney disqualification. *See, e.g.*, *ESN, LLC v. Cisco Sys., Inc.*, 685 F. Supp. 2d 631, 645 (E.D. Tex. 2009) (declining to reach motion to disqualify counsel where subject-matter

9

jurisdiction was lacking); *Dinger v. Gulino*, 661 F. Supp. 438, 442 n.3 (E.D.N.Y. 1987) (concluding that the court should address jurisdictional matters before considering a motion to disqualify opposing counsel); *Rice v. Rice Found.*, 610 F.2d 471, 478 (7th Cir. 1979) (explaining that a court must have and exercise subject-matter jurisdiction before ruling on a motion to disqualify). But we do not find these cases persuasive because the jurisdiction of federal courts established by Article III of the United States Constitution—unlike the jurisdiction of our state courts—is narrowly prescribed. Federal courts "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Moreover, in federal district courts, "[i]t is to be presumed that a cause lies outside this limited jurisdiction . . . , and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citation omitted). By contrast, Minnesota state courts are courts of general jurisdiction. *Irwin v. Goodno*, 686 N.W.2d 878, 880 (Minn. App. 2004) ("District courts are courts of general jurisdiction and have the power to hear all types of civil cases, with a few exceptions. . . ."); *see also E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 957 (7th Cir. 2021) ("While state courts are courts of general jurisdiction—essentially open to all comers on all matters—federal courts are courts of limited jurisdiction."). Given the distinction between the jurisdiction of Article III courts and our state district courts, we are not persuaded by the federal authority that Crow Wing Recycling cites to support its argument that the district court was required to determine that it had subject-matter jurisdiction over Northern Metals' substantive claims before addressing the motion to disqualify counsel.

The district court had jurisdiction to rule on Northern Metals' motion to disqualify counsel because the disqualification matter was a special proceeding. Thus, we decline to reverse the district court's order disqualifying counsel on this ground.

## II.  The district court did not abuse its discretion by disqualifying counsel from representing Crow Wing Recycling.

Crow Wing Recycling and counsel argue that the district court abused its discretion in disqualifying counsel. They contend that the district court clearly erred in determining that Perry and Asmus's prior representation of Northern Metals was substantially related to the current lawsuit and, in turn, this error led the district court to improperly disqualify counsel.

Appellate courts "review the district court's decision regarding disqualification of counsel for an abuse of discretion." *Swanson*, 845 N.W.2d at 816. A district court abuses its discretion if it misapplies the law, makes findings that are unsupported by the record, or resolves the discretionary question in a manner that is contrary to logic and the facts on record. *Honke v. Honke*, 960 N.W.2d 261, 265 (Minn. 2021). An appellate court reviews the factual findings underlying a district court's disqualification decision for clear error, and its interpretation of a rule of professional conduct de novo. *Prod. Credit Ass'n of Mankato v. Buckentin*, 410 N.W.2d 820, 822-23 (Minn. 1987).

The district court determined that counsel is disqualified from representing Crow Wing Recycling under Minnesota Rule of Professional Conduct 1.9(a). Under that rule, a lawyer is prohibited from representing a client with interests that are materially adverse to the interests of the lawyer's former client. Minn. R. Prof. Conduct 1.9(a). The rule states:

11

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

*Id.* Rule 1.9(a) seeks "to ensure the attorney's absolute fidelity and to guard against inadvertent use of confidential information." *Nat'l Texture Corp. v. Hymes*, 282 N.W.2d 890, 894 (Minn. 1979).

The district court also invoked Minnesota Rule of Professional Conduct 1.10 to disqualify Taft. Under that rule, if one lawyer in a firm is prohibited from representing a former client under rule 1.9(a), the lawyer's firm may also be disqualified from the representation. Rule 1.10 states:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule . . . 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Minn. R. Prof. Conduct 1.10(a).

Crow Wing Recycling and counsel's primary argument is that the district court abused its discretion in determining that Perry and Asmus's prior representation of Northern Metals was substantially related to the current representation of Crow Wing Recycling. According to Crow Wing Recycling and counsel, the prior representation involved matters wholly separate from Northern Metals' lawsuit, and the district court therefore erred in disqualifying counsel on this basis.

The moving party "bears the burden of showing that disqualification is warranted." *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998). To disqualify counsel under rule 1.9(a), the moving party must establish that:

> (1) the moving party and opposing counsel had a prior attorney-client relationship, (2) the interests of opposing counsel's current client are materially adverse to the interests of the moving party, and (3) the present lawsuit is substantially related to a matter in which opposing counsel previously represented the moving party.

*Swanson*, 845 N.W.2d at 816 (citing Minn. R. Prof. Conduct 1.9(a))

The district court determined that Northern Metals satisfied its burden. It ruled that the disqualification was warranted because: (1) Perry, Asmus, and their law firm previously represented Northern Metals, (2) Northern Metals' interests are adverse to Crow Wing Recycling's interests, and (3) the present lawsuit is substantially related to the former matter.

All parties seem to agree with the district court's analysis of the first two elements of the *Swanson* test. There is no dispute that Perry, Asmus, and their law firm previously represented Northern Metals and that they now represent Crow Wing Recycling, whose interests are materially adverse to Northern Metals. But Crow Wing Recycling contests the district court's determination that there is a substantial relationship between the earlier case and the current case.

Matters are substantially related under the third element of the *Swanson* test when "they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior

13

representation would materially advance the client's position in the subsequent matter." Minn. R. Prof. Conduct 1.9 cmt. 3; *see also Swanson*, 845 N.W.2d at 816. A court considers the overlap of factual and legal issues, as well as any other relevant circumstances. *Swanson*, 845 N.W.2d at 816. Whether two matters are substantially related "depends on the facts of a particular situation or transaction." Minn. R. Prof. Conduct 1.9 cmt. 2. When the client is an organization, "general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation," but "knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation." *Id.*, cmt. 3. "[T]here is a rebuttable presumption that the attorney obtained such information 'as would normally have been obtained in the prior representation.'" *Swanson*, 845 N.W.2d at 816 n.4 (quoting Minn. R. Prof. Conduct 1.9 cmt. 3); *see also* Restatement (Third) of Law Governing Lawyers § 132 cmt. d(iii) (2000) ("When the prior matter involved litigation, it will be conclusively presumed that the lawyer obtained confidential information about the issues involved in the litigation."). The lawyer has the burden to prove that the lawyer did not have access to confidential information. Restatement (Third) of Law Governing Lawyers § 132 cmt. h (2000).

The district court determined that there was a "significant legal and factual overlap" between Perry and Asmus's representation of Northern Metals from 2012 to 2016 and two of the three claims alleged against Crow Wing Recycling in the present complaint.[4] It

---

[4] Counsel argue that the district court abused its discretion by disqualifying them from the matter in its entirety, given this claim-by-claim approach. However, we consider the

14

noted that Northern Metals' former counsel "were deeply and intimately involved in extensive and vigorously contested administrative and court proceedings relating to MPCA's regulation of Northern Metals's operations" from 2012 through 2016. The district court noted that count I relies on MERA, which establishes a civil action that may be brought against an agency for failing to protect the environment from pollution. Similarly, count III alleges that the MPCA failed to act appropriately as a trustee or steward of Minnesota's water resources. The district court stated that these actions "do not require Northern Metals to prove [Crow Wing Recycling] violated its Option D Permit," and instead require Northern Metals to show that "MPCA acted inappropriately in issuing the permit and in neglecting to assume a more vigorous enforcement stance" against Crow Wing Recycling.

In support of its determinations, the district court extensively discussed the nature and extent of Perry and Asmus's prior representation of Northern Metals. The record confirms the district court's findings that between 2012 and 2016, Perry, Asmus, and their law firm represented Northern Metals in extensive interactions with the MPCA; the

district court's claim-by-claim analysis to reflect its detailed examination of the lawsuit. The rule instructs that a lawyer may be disqualified from representing another party in "the same or a substantially related matter." Minn. R. Prof. Conduct 1.9(a). "The scope of a 'matter' for purposes of this rule depends on the facts of a particular situation or transaction." Minn. R. Prof. Conduct 1.9 cmt. 2. Having determined that there were significant legal and factual overlaps in two of the three claims, and in light of the unique facts of this case, the district court concluded that it was required to disqualify counsel from representing Crow Wing Recycling in the matter as a whole. We find no abuse of discretion in the district court's claim-by-claim approach or in its ultimate determination that the legal and factual overlap between the prior representation and two of the three claims in the present lawsuit disqualify counsel from representing Crow Wing Recycling in the lawsuit in its entirety.

representation included legal advice and confidential communications regarding the regulation of air pollutants, metal-shredding operations, performance testing, the conduct of other metal-shredding operations in Minnesota, and Northern Metals' ability to obtain a new operating permit, among other things; and, according to Northern Metals' chief operating officer, Perry and Asmus handled "multiple matters for Northern Metals involving air permitting and Northern Metals' metal shredding operations under Minnesota laws and MPCA requirements." And the record confirms that Perry, Asmus, and their law firm represented the company in three legal proceedings, including: (1) *Northern Metals LLC vs MPCA, et al.* (Court File No. 62-CV-12-1590), (2) an administrative matter that the MPCA initiated (OAH 60-2200-33647), and (3) *Northern Metals LLC vs John Linc Stine, et al.* (Court File No. 62-CV-15-3827). The chief operating officer's affidavit states that "[t]hese matters were actively litigated by Perry, and there were numerous strategic discussions with Northern Metals that included discussion of confidential information."

Additionally, the district court noted that Perry and Asmus also represented Northern Metals from 2015 to 2016, when Northern Metals decided to move its operations from its Minneapolis location to its current location in Becker. One of Northern Metals' current attorneys submitted a declaration stating that, based on her review of the files relating to Perry and Asmus's representation, she found invoices containing "multiple references to the relocation" to Becker. According to the current attorney, this work included meetings with the City of Becker and Sherburne County regarding relocation, emails and updates to the city, preparation of a project site map, a draft relocation project costs chart, and lobbying efforts regarding the relocation, among other things.

16

Additionally, Perry and Asmus drafted a confidential settlement conference statement and a proposed stipulation agreement, with multiple attachments including a draft purchase agreement for land in Sherburne County.

According to the district court, this declaration "show[ed] [that] Northern Metals saw the Becker relocation as intertwined with the permitting requirements MPCA might impose on the Becker facility as well as the permitting requirements MPCA might impose on its competitors." It determined that the former representation included advice about "the planned facility move to Becker and advice as to what regulatory, monitoring, and reporting scheme MPCA might accept." The district court reasoned that these factual and legal issues were "most certainly part of Northern Metals' strategic decision to relocate from Minneapolis to Becker." The confidential information shared during this representation from 2015 to 2016 regarding the relocation to Becker, and what the MPCA would accept and permit with regard to metal-shredding operations, constitutes a significant overlap with the claims asserted against Crow Wing Recycling and the MPCA in this litigation. Given the significant overlap between Perry and Asmus's prior representation of Northern Metals and the current litigation, the district court presumed that they obtained confidential information from Northern Metals that would be relevant to its current claims against Crow Wing Recycling.

We discern no abuse of discretion in the district court's determination that there was substantial overlap between the prior representation and the current representation. The district court supported this determination with facts in the record. And the district court

17

explained how counsel would have obtained relevant confidential information in the prior representation that could damage Northern Metals in the new case.[5]

Crow Wing Recycling and counsel argue that the district court erroneously applied the "playbook conflicts theory" to Northern Metals' disqualification motion. According to their brief, a playbook conflict "describe[s] claims of conflict based on a lawyer's alleged knowledge of how a former client handles claims, how the former client operates, what advice a former lawyer gave on a matter of the same general type as a current matter, and other general types of information." Crow Wing Recycling and counsel contend that Northern Metals relied heavily on the "playbook conflicts theory" during the proceedings below and that the district court erroneously adopted this theory.

However, the record does not support this argument. The district court did not reference or discuss the "playbook conflicts theory" in its order. Instead, it analyzed all of the relevant circumstances and presumed that counsel obtained confidential information in the prior representation of Northern Metals, including: (1) information about "measurement, monitoring, abatement, and reporting"; (2) information about "metal recycling facility emissions" and Northern Metals' "calculation, monitoring, and record keeping of the same"; (3) "full access to high level executives at Northern Metals relating to air emissions testing, feasibility and costs of various facility equipment and emissions controls"; (4) the "feasibility and costs" of monitoring and control plans; and (5) "access

_____

[5] Crow Wing Recycling and counsel do not argue on appeal that counsel rebutted the presumption that counsel obtained relevant confidential information during counsel's representation of Northern Metals.

18

to experts and expert opinions and thought processes relating to the same subjects." This confidential information goes beyond the type of general knowledge contemplated by the "playbook conflicts theory."

We acknowledge that "[d]isqualifying a party's counsel of choice should be imposed only where absolutely necessary." *Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (quotation omitted). Motions to disqualify are "subjected to particularly strict judicial scrutiny" because of their potential for abuse by opposing counsel. *Olson*, 183 F.R.D. at 541-42 (quotation omitted). However, while courts examine motions to disqualify with scrutiny, "any legitimate doubts" as to the existence of conflict "must be resolved in favor of disqualification." *Id.* at 542. This is due in part to a party's "interest in a trial free from even the *risk* that confidential information has been unfairly used against it," *Gifford v. Target Corp.*, 723 F. Supp. 2d 1110, 1117 (D. Minn. 2010) (quotation omitted), and the court's duty to maintain public confidence in the legal profession and to ensure the integrity of the judicial proceedings, *United States v. Agosto*, 675 F.2d 965, 969 (8th Cir. 1982).

Upon review, we conclude that the district court properly applied Minnesota Rules of Professional Conduct 1.9 and 1.10 and the three-part test articulated in *Swanson*, 845 N.W.2d at 816, to the facts of this case. The record supports the district court's determinations that Perry, Asmus, and their law firm previously represented Northern Metals, that Northern Metals and Crow Wing Recycling have adverse interests, and that the present litigation is substantially related to the previous matter. Additionally, the record supports the district court's determination that counsel did not rebut the presumption that

19

Perry and Asmus obtained relevant confidential information during the prior representation of Northern Metals. Accordingly, the district court did not abuse its discretion by disqualifying counsel from further representation in this case.

**Affirmed.**